IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RUI JIANG,<br><br>Defendant. | Case No. 1:24-cr-65<br><br>Hon. Rossie D. Alston, Jr.<br><br>Motions' Hearing: June 5, 2024 |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

The defendant argues that a search warrant, authorized by a Magistrate of the Fairfax County Circuit Court for a narrowly defined search of his apartment, was issued in violation of the Fourth Amendment. It was not. And, regardless, law enforcement operated in good faith relying on a judicially-sanctioned warrant. For the reasons set out below, the defendant's challenge must fail.

## PROCEDURAL HISTORY

On February 23, 2024, Jiang was charged by federal complaint with transmitting threats of injury against another in interstate commerce, in violation of 18 U.S.C. § 875(c). On March 27, a grand jury sitting in the Eastern District of Virginia issued a federal indictment charging Jiang with three counts: (1) attempted obstruction of free exercise of religious beliefs, in violation of 18 U.S.C. § 247(a)(2), (d)(1), and (d)(3) (Count One); (2) use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and (3) transmitting in interstate and foreign commerce a threat to injure the person of another, in violation of 18 U.S.C. § 875(c) (Count Three). The indictment also includes a notice of special findings, notably that: (1) Jiang intentionally selected the victims of Count One because of their

actual and perceived religious beliefs, and (2) Jiang intentionally selected the victims of Count Three because of their actual and perceived religious beliefs.

**ARGUMENT**

The defendant lobs three attacks against the Fairfax County Police Department's search warrant application. The defendant appears to concede that the warrant affidavit establishes probable cause that a crime was committed by the defendant but contends that the warrant failed to provide a sufficient basis to establish that evidence of the alleged criminal conduct would be found at his residence. The defendant secondly argues the scope of the warrant was overbroad. Thirdly, the defendant posits that the good faith exception does not apply here. On all accounts, he is wrong.

1. **The Magistrate Had a Substantial Basis to Conclude that the Search of the Defendant's Residence Would Uncover Evidence of a Crime.**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. AMEND. IV. A warrant satisfies the Fourth Amendment if it is (1) supported by probable cause; (2) sufficiently particular; and (3) issued by a neutral and disinterested magistrate. *See Dalia v. United States*, 441 U.S. 238, 255 (1979). Probable cause is a "fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). In the context of a search warrant, probable cause has been said to exist "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Whether such a fair probability—not a certainty nor even a preponderance of the evidence—exists depends upon the totality of the circumstances, including "reasonable, commonsense inferences" that an issuing magistrate is entitled to draw. *United*

*States v. Richardson*, 607 F.3d 357, 371 (4th Cir. 2010). Ultimately, probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Inherent within a probable cause determination for a search warrant, the Fourth Circuit has pronounced, "the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993). Additionally, information must exist that links the criminal activity under investigation to the place or thing to be searched. *Id.* at 1583. Nonetheless, a sufficient nexus can be found to exist even when the affidavit contains no factual assertions directly linking the items sought to the defendant's residence. *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005); *see also United States v. Martin*, 839 F. App'x. 789, 792 (4th Cir. 2021). Rather, the nexus can be established by the nature of the item sought, the normal inference of where one would likely keep such evidence, and/or an affiant's assertion of training-and-experience-based knowledge that supports the nexus. *See Grossman*, 400 F.3d at 217; *United States v. Williams,* 548 F.3d 311, 319 (4th Cir. 2008); *Martin*, 839 F. App'x. at 792.

As for the standard of review, recognizing that reasonable minds may differ regarding whether a particular affidavit establishes probable cause, the Supreme Court has "concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *United States v. Leon*, 468 U.S. 897, 914 (1984) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969); *see also Grossman*, 400 F.3d at 217; *United States v. Blackwood*, 913 F.2d 139, 142 (4th Cir. 1990). Therefore, rather than engaging in a de novo review of probable cause, courts must apply a "deferential and pragmatic standard to determine" only whether the magistrate had a substantial basis to conclude that a search would uncover evidence of a crime. *United States v. Bosyk*, 933 F.3d 319, 325 (4th Cir. 2019); *see also*

*Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *United States v. Zelaya-Veliz*, 94 F.4th 321, 335 (4th Cir. 2024). Additionally, when "reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

The affidavit, signed September 24, 2023, establishes probable cause that a crime had been committed by the defendant. The affiant, a detective of Fairfax County Police Department, affirms he has been a sworn officer for the County of Fairfax for over seven years. ECF 41-1 at 6. The detective lays out his experience, having participated in numerous search warrants and arrests, as well as relevant training to preparing and substantiating search warrants. *Id.* He explains that on September 24, 2023, someone reported concerning statements being made by the defendant via his apparent Instagram account to the Anne Arundel Police Department. *Id.* at 7. The affidavit next details the language and context of various threatening posts uploaded to the "ray43386" Instagram account, to include phrases such as "#bulletToTheHead," the defendant's references to killing people, and a specific reference to Park Valley Church. *Id.* at 7. The affidavit establishes that the defendant was interviewed and confirmed himself to be the owner of the Instagram account and admitted to uploading the posts in question. *Id*. Undoubtedly, the magistrate had a substantial basis to conclude that the defendant had committed a crime— namely, threat(s) of death or bodily injury, in violation of the Code of Virginia, Section § 18.2-60. The defendant does not contest this point.

The defendant does contest, however, that the affidavit established a nexus between the alleged criminal conduct and the defendant's apartment. He is incorrect. The affidavit sets forth that the defendant posted a photograph on Instagram in which he appears to be pointing a firearm at a TV screen displaying the image of a church. ECF 41-1 at 7. The affidavit also explains that the defendant posted a video of burning pages on their stovetop, which the defendant identified

4

in the Instagram caption as a Bible. The affiant explains that the defendant further posted a photograph of what appears to be a physical document that had been signed, that its contents appear to match the captions from other relevant Instagram posts, and that the defendant in an interview mentioned he kept a journal. *Id*. The affiant establishes that he has records to show the defendant purchased more than one firearm in 2023; that the defendant had brandished an apparent firearm in one of his Instagram posts; that the defendant's posts were violent; and that the defendant had been detained at the Park Valley Church with a single loaded firearm with an extra magazine on his person and another in his car. *Id.* at 7-8. Due to this, the affiant concludes that the residence must contain more firearms than previously recovered by police. Having established that a crime had been committed by the defendant and having delineated the categories of evidence that might be found at the defendant's residence, the affiant affirmed that, based on his "knowledge, training, and experience," "persons who commit crimes keep the fruits and instrumentalities of their crimes in their primary residence." *Id*. at 8. He explained this is common because "in this fashion that they can check on the security of such items in privacy and with minimal fear of discovery." *Id*.

Based on a totality of the circumstances, the Fairfax County Magistrate had a substantial basis, employing common sense and reasonable inferences, to believe that the evidence sought would be located at the defendant's residence. Fairfax County Police Department was investigating the defendant for allegedly posting electronic threats of death or bodily injury. They believed the defendant had posted the threats, and needed to confirm that theory. A first step would be to be find the items photographed in the posts, or the electronic devices used to upload the posts, and the defendant's residence was the most logical and reasonable place to begin. The Magistrate was correct to make a "practical, commonsense determination" based on the totality of the affidavit, all the while considering the "normal inferences of where one would

likely keep" the evidence sought, to determine that a nexus had been established. *See United States v. Allen*, 631 F.3d 164, 173 (4th Cir. 2011). More explicitly, the Magistrate was entitled to a commonsense determination that items such as the television, firearm(s), the burnt Bible, journal, electronics, and the physical document would be found inside the defendant's residence.

Despite the deference due to these determinations, the defendant nonetheless engages in technical attacks on the affidavit. For instance, the defendant protests that the affidavit does not indicate that he intended to use the journal in connection with the threats. ECF 41 at 9. However, an affiant is not required to close every inferential loop or directly link each piece of evidence sought to the place to be searched. Instead, the affidavit must only "supply enough facts for a neutral magistrate, who may make reasonable inferences to fill in any logical gaps, to find the required nexus." *See United States v. Orozco*, 41 F.th 403, 410 (4th Cir. 2022); *United States v. Jones*, 942 F.3d 634, 639 (4th Cir. 2019). The defendant further suggests that he may have been journaling about "innocent behavior" and argues that the affidavit fails to prove the incriminating document in the Instagram post actually belonged to him. ECF 41 at 9. Yet, neither an affiant nor the magistrate must rule out every innocent explanation for suspicious facts in making a probable cause determination. *See Orozco,* 41 F.4th at 408; *Bosyk*, 933 F.3d at 325. As noted above, courts must take a totality of the circumstances approach in reviewing these affidavits, precisely to quickly dispatch with attempts, such as the defendant's, to pick apart prior warrants.

The defendant further alleges that nothing in the affidavit connects the location of the photographs to his apartment. ECF 41 at 8-9. Untrue. For instance, the affiant notes that an Instagram post shows the "subject burning pages in a pot on their stovetop." ECF 41-1 at 7. It takes little power of deduction to determine that one's stovetop would be in one's kitchen, further located in one's residence. Yet, even if the affidavit wholly failed to provide an explicit link to the defendant's residence (which is not the case), a magistrate is entitled to find the nexus

requirement satisfied by looking to the affiant's training-and-experience declarations, *see Zelaya-Veliz*, 94 F.4th at 335 (acknowledging that magistrates act within their discretion to rely on an officer's assertion of training and experience-based knowledge to help substantiate the nexus between the crime and the location to be searched), and by employing commonsense and normal inferences as to where certain evidence would ordinarily be kept. *See Lalor*, 996 F.2d at 1582 (noting that the nexus between the place to be searched and items to be seized may be established by normal inferences given all the circumstances). Here, the affiant invoked his training and experience to explicitly connect the search for evidence to the defendant's residence. ECF 41-1 at 8. Ultimately, the totality of the affidavit, the affiant's experience-and-training-based assertions, the magistrate's commonsense along with the nature of the items sought all provide more than a substantial basis for the magistrate to have concluded that the nexus requirement had been satisfied.[1]

### 2. **The Challenged Search Warrant was Sufficiently Particular and Not Overbroad.**

Defendant next argues the search warrant was overbroad because it "primarily sought objects related to Mr. Jiang's legally owned firearm." ECF 41 at 11. According to the defendant's logic, firearms have absolutely no relation to the alleged crime, nor could they provide any evidence in relation to threats of bodily injury or death. Therefore, he concludes, the inclusion of firearms in the scope of the warrant rendered this warrant an overbroad, generalized

---

[1] At times, the defendant appears to argue that if something is not in and of itself contraband then it could not serve as evidence, or that its lawful status would somehow invalidate the search. Unsurprisingly, he offers no legal support for these unclear arguments. The defendant himself acknowledges that the probable cause standard looks to whether there is a fair probability that contraband *or evidence* of a crime would be found in a particular place. *See* ECF 41 at 6. Items such as private writings and firearms, whether legally owned or even constitutionally protected, may nonetheless serve as evidence of the defendant's intent to engage in electronically transmitted threats of bodily injury or death.

warrant. The challenge here feels more like a relevance/evidentiary argument dressed up as a constitutional question and, regardless, misses the mark.

Under the Fourth Amendment, "a valid warrant must particularly describe the place to be searched, and the persons or things to be seized." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (internal quotation marks omitted). As the scope of an authorized search must be stated with particularity, a warrant precludes the government from having "unbridled discretion to rummage at will among a person's private effects." *Arizona v. Gant*, 556 U.S. 332, 345 (2009). The Fourth Circuit has found that the particularity requirement "is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (quoting *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010)). The particularity requirement may be satisfied by specifying that officers may seize evidence related to a particular crime, such as by simply stating "bank robbery." *United States v. Cobb*, 970 F.3d 319, 328 (4th Cir. 2020).

Further, the items listed to be seized pursuant to a warrant must be "no broader than the probable cause on which it is based." *United States v. Hurwitz*, 459 F.3d 463, 473 (4th Cir. 2006). The test "is a pragmatic one" that "may necessarily vary according to the circumstances and type of items involved." *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (quoting *United States v. Davis*, 542 F.2d 743, 745 (8th Cir. 1976)). Here, the challenged warrant easily satisfies the Fourth Circuit's requirements on particularity as the warrant solely authorized the collection of evidence relating to a violation(s) of Section § 18.2-60 of the Virginia Code. *See* ECF 41-1, at 6, 8. However, the warrant went further by providing a clear list of what evidence may be seized. It laid out three categories of evidence to be seized, allowing for items/records relating to firearms, documents related to the crime of threats of death or bodily injury, and all

8

electronic devices. Contrary to the defendant's argument, the warrant was very specific. This was far from a broadly phrased warrant allowing for an exploratory rummaging of the defendant's residence that the Fourth Circuit warns against. *See Dargan*, 738 F.3d at 647.

Not only was the warrant sufficiently particular, but the items it listed to be seized—including firearm-related material—were sufficiently linked to the probable cause. Despite the defendant's best efforts to make it seem otherwise, it is uncontroversial for this warrant to include a focus on firearms; the defendant's firearms could provide evidence toward one or more threats of bodily injury or death that *involved firearms*. Nevertheless, the defendant appears to argue that since the Magistrate authorized the search for firearms, that *anything and everything* seized pursuant to this warrant would be tainted and worthy of suppression. But the warrant laid out three categories of evidence, two of which were unrelated to firearms. Further, it appears that only one type of evidence recovered from the defendant's residence – "2 empty holsters (black in color)", *see* ECF 41-2 at 3, could be challenged by the overbreadth argument. The rest of the items seized, such as the "final letter," are responsive to the other two categories of evidence authorized for seizure, which the defendant does not challenge. *See* ECF 41 at 11 ("The *only* request for objects related to the alleged criminal conduct is "any documents related to the crime of threats of death or bodily injury, and all electronic devices.").[2]

Defendant points to *United States v. Lyles*, but that case is not similarly situated. There, the police, via a trash pull, found scant evidence of marijuana, to include three marijuana stems and three empty packs of rolling papers, but nonetheless sought a search warrant of the defendant's house that allowed for the seizure of myriad objects unrelated to marijuana

---

[2] There is no "taint" remedy such that the defendant can secure suppression of all items simply because a warrant allowed perhaps for the search and seizure of one problematic item, so he, at most, is limited to a surgical suppression request of the firearm material. But even that request, as laid out above, is unwarranted.

possession. *See United States v. Lyles*, 910 F.3d 787, 793-795 (4th Cir. 2018). The Circuit rightfully noted that, especially considering the minimal evidence of marijuana possession, the warrant erroneously allowed for "the seizure of any computers, toiletries, or jewelry, and the search of every book, record, and document in the home." *Id*. at 795. "The connection of such things to the personal possession of marijuana is, to put it gently, tenuous", the Circuit concluded. *Id*. The warrant at issue here is incomparable to the *Lyles* situation. Here, the affidavit provides significant evidence of a serious criminal violation, and the warrant authorizes the seizure of specific and limited items that could directly provide evidence of the enumerated criminal violation. This was no fishing expedition.

3. **<u>The Good Faith Exception Applies Here.</u>**

Defendant next asserts that if the Court were to find the affidavit lacking a nexus or the scope of the warrant to be overbroad, that this is one of those very rare and extreme cases in which the Court should refuse to apply the good-faith exception to deter future misconduct. This feeble attempt should be denied.

Even if the Court finds that the search warrant was not supported by probable cause or was overly broad, that "does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009).[3] To be sure, suppression is a remedy of "last resort" meant for the "sole purpose" of deterring future Fourth Amendment violations, and only when the deterrence benefits of suppression "outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 236-37 (2011). In *Leon*, the Supreme Court demanded that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those

---

[3] In cases like this, in which a defendant challenges probable cause and the good-faith exception, a court may proceed directly to the good-faith analysis without first deciding whether the warrant was supported by probable cause. *See United States v. Legg*, 18 F.3d 240, 243 (4th Cir. 1994).

unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon*, 468 at 918.

Pursuant to the good-faith exception to the exclusionary rule, suppression is not warranted when officers rely in good faith on an objectively reasonable search warrant issued by a neutral and detached judge. *Id.* at 918-19. This is because "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921. The Supreme Court identifies only four situations when the exclusion of evidence seized pursuant to a warrant is appropriate. Those include when: "(1) the issuing magistrate was misled by the inclusion of knowing or recklessly false information; (2) the issuing magistrate wholly abandoned the detached and neutral judicial role; (3) the warrant is facially deficient as to its description of the place to be searched or the things to be seized; or (4) the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no reasonable officer could rely on it in good faith." *Id*. at 923-24.

This objective standard is measured by "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*. at 922, n. 23. "[A] warrant issued in good faith by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Id*. at 922 (internal quotation marks omitted). The threshold for overcoming this good-faith presumption is a "high one." *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012); *see also United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019) ("Overcoming the presumption of good faith is no small feat, as an officer cannot ordinarily be expected to question a judge's probable cause determination.").

Defendant first invokes prong four of the *Leon* test and cites to *United States v. Woodley*, 447 F. Supp. 3d 487 (E.D. Va 2020). There, the affiant explained that a traffic stop of the defendant resulted in the seizure of marijuana and then essentially laid out where the defendant

11

lived. *See id*. at 489-90. In that case, the Court rejected the application of the good-faith exception, noting that the "affidavit still must draw some plausible connection to the residence." *Id.* at 495 (quoting *United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016)). The Court reasoned that such evidence was simply missing in the affidavit before it. *Id*. *Woodley* is clearly not analogous here. As explained above, the affiant here made several connections between the crime and evidence that could probably be found at the defendant's residence. This is simply not a case in which the affiant provided probable cause that the defendant committed a crime and then simply offered up his address, with nothing further. In other words, a well-trained officer could have reasonably relied on the challenged affidavit.

Next, the defendant argues that the good faith exception does not apply to a warrant based on a "bare bones affidavit." To be sure, the good-faith exception to the exclusionary rule does not apply in cases "where the affidavit provides only minimal, vague information." *United States v. Branch*, 705 F. App'x. 151, 156 (4th Cir. 2017) (citing *Wilhelm*, 80 F.3d at 121). A "bare bones affidavit" is one made up of "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Wilhelm*, 80 F.3d at 121 (quoting *United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993)); *see also United States v. Perez*, 393 F.3d 457, 465 (4th Cir. 2004) (defining a "bare bones" affidavit as essentially identical to a conclusory affidavit that affirms only that the affiant believes that probable cause exists).

The Fairfax affidavit is light years from a take-my-word-for-it affidavit, and, therefore, the Magistrate did not act as a rubber stamp. Here, the affidavit laid out with specificity evidence that the defendant had engaged in threats of bodily injury or death through his Instagram posts, which the defendant admitted to posting in an interview. Not only were these threats made directly at the Church leading up to September 24, 2023, but he was later detained at the Church

that same day with a loaded firearm and two spare magazines (one on his person and one in his car). The affidavit clearly established evidence of the threats charge, but then further linked the possibility of evidence of this crime being found at the defendant's residence. The affidavit, which was based upon the affiants' personal knowledge, was leagues away from being "wholly conclusory," such that a neutral magistrate could not have independently determined probable cause.

In conclusion, even if the application failed to establish a sufficient nexus between the criminal activity and the defendant's residence, or even if it were overly broad, it cannot be said that the warrant was so lacking in probable cause or was so objectively overbroad that the officer's reliance on the same was objectively unreasonable. *See Lalor*, 996 F.2d at 1583-84 (finding the warrant application deficient for failing to establish the required nexus for the search, but rejecting the motion to suppress since the officer's reliance was not objectively unreasonable); *United States v. Jenkins*, 666 F. App'x 321, 323-24 (4th Cir. 2016) (same). Thus, "even assuming the alleged defects in the affidavit demonstrate an absence of probable cause, the officers' reliance on the warrant was in good faith," and the evidence should not be suppressed. *Jenkins*, 666 F. App'x at 324.

To recap, the warrant contained no knowingly or recklessly false information[4] (or omission), let alone anything of that sort material to the issue of probable cause. The issuing magistrate did not abandon his or her judicial role, as explained in this section. The warrant

---

[4] Defendant makes an argument that the affiant falsely stated a video showed burning pages on "their" stovetop. ECF 41 at 13 n.1. Defendant argues that the affiant did not know that it was his residence, and it could have been an AI-generated picture, or a clip downloaded off the internet. However, there is no knowing or reckless falsity here. The video of the burning Bible, referenced by the affiant, had a caption saying, "Burning the Bible in *my* kitchen." (emphasis added). Given those facts, it was more than fair for the affiant to take the defendant at his word. Further, when deciding whether the good-faith exception applies, courts may consider "uncontroverted facts known to [law enforcement] but inadvertently not presented to the magistrate" in the affidavit. *See United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011). This is especially true here when the affiant's veracity has been challenged.

clearly and particularly described the information to be searched and what law enforcement would be seizing, as explained in the preceding section. Lastly, the affidavit gave a substantial basis to determine probable cause to issue the warrant, as explained here and in the first section. Absent any of these errors, once the judge signed the warrant, the officers' reliance on that authority was objectively reasonable. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). Ultimately, the Fairfax County Police Department acted reasonably in relying on the Circuit Court Magistrate's authorization of the warrant, and so the evidence seized pursuant to it should not be suppressed.

## **CONCLUSION**

The defendant has failed to demonstrate that the search warrant authorizing the search of his apartment violated the Fourth Amendment. Furthermore, even if a violation took place, this is squarely one of those situations in which the good faith exception should apply, and no suppression of evidence should follow. Therefore, the undersigned respectfully request that the Court deny the defendant's motion to suppress. ECF 41.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: May 14, 2024        By:        /s/
                                     Nicholas A. Durham
                                     NY Bar No. 4712741
                                     Troy A. Edwards, Jr.
                                     Assistant United States Attorneys
                                     United States Attorney's Office
                                     2100 Jamieson Avenue
                                     Alexandria, Virginia 22314
                                     Tel: (703) 299-3700
                                     Fax: (703) 299-3982
                                     nicholas.durham@usdoj.gov


                                     Kristen M. Clarke
                                     Assistant Attorney General
                                     Civil Rights Division


                                         /s/Kyle Boynton
                                     Kyle Boynton
                                     Trial Attorney
                                     Criminal Section
                                     950 Pennsylvania Ave. NW
                                     Washington, DC 20530
                                     Phone: 202-598-0449
                                     Kyle.Boynton@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 14, 2024, I filed the foregoing with the Office of the Clerk of Court electronically using the CM/ECF system, which will automatically send a notification of such filing to all counsel of record.

                                                /s/
                                      Nicholas A. Durham
                                      Assistant United States Attorney